AUTORIDAD DE ENERGÍA ELÉCTRICA, peticionaria, *v.* MAXON EN-GINEERING SERVICES, INC., recurrida.

*Número:* CC-2002-907 *Resuelto:* 9 de diciembre de 2004

*Arsenio A. Ramos Hernández*, abogado de la parte peticionaria; *Raúl González Toro, Erasmo Reyes Peña, José A. Tulla Vargas* y *Alfredo Ortiz Medina*, abogados de la parte recurrida.

EL JUEZ PRESIDENTE SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

La Autoridad de Energía Eléctrica (A.E.E.) nos solicita la revisión de una sentencia que emitió el antiguo Tribunal de Circuito de Apelaciones en la cual se confirmó la decisión de un juez administrativo de la mencionada corporación pública de adjudicar cierta subasta a favor de Maxon Engineering Services, Inc. (Maxon). Examinados los hechos de este caso, así como la normativa aplicable, revocamos la determinación del foro apelativo intermedio. Veamos.

## I

La A.E.E. cursó una invitación a subasta pública encaminada a otorgar un contrato para la rehabilitación de la Caldera #5 de la Central Termoeléctrica Costa Sur. A la

subasta comparecieron los siguientes licitadores con sus respectivas ofertas:

| Licitadores | Cotización |
|---|---|
| Central Industrial Services, Inc. | $4,723,000 |
| KD Contractors | $4,958,000 |
| Maxon Engineering Services, Inc. | $5,004,290 |
| Ensysa Product Manufacturing Inc. | $5,735,478 |

Evaluadas las solicitudes, el Comité Permanente de Subasta de la A.E.E. adjudicó la buena pro a Central Industrial Services, Inc. (Central) como el licitador más bajo que cumplía con las especificaciones, los términos y las condiciones de la subasta.[1] Dicha determinación le fue comunicada a los licitadores no favorecidos.

Oportunamente, Maxon solicitó una reconsideración. En lo pertinente, alegó que la compañía favorecida no cumplía con los requisitos de *experiencia* establecidos por la A.E.E. en los pliegos de subasta. El Juez Administrativo designado por la A.E.E. para atender en el asunto acogió la solicitud de reconsideración presentada por Maxon.[2] Al así hacerlo, anuló la determinación del Comité Permanente de Subasta de la A.E.E. y adjudicó la subasta a favor de Maxon. Particularmente, y respecto a los requerimientos de experiencia previa que disone el Art. 20 de las Con-

---

[1] En cuanto a la propuesta de Central Industrial Services, Inc. (Central), el Comité Permanente de Subasta de la Autoridad de Energía Eléctrica (A.E.E.) expresó:

"Esta compañía está cualificada técnicamente. No han realizado este trabajo anteriormente. *Presentan evidencia de empleados supervisores con experiencia en trabajos similares.* No hace excepción a las especificaciones técnicas de las Condiciones Especiales. Están evaluados para proveer el servicio solicitado en la subasta. No sometieron precio unitario para los trabajos adicionales, pero se calculó el mismo al dividir el precio total cotizado en el total de unidades. Esta operación matemática aplica en igualdad de condiciones a los otros licitadores. Cumple con los términos comerciales requeridos para la misma. Su precio cotizado es $4,723,000, el cual es el más bajo evaluado." (Énfasis suplido.) Apéndice de la Petición de *certiorari*, pág. 21.

[2] La solicitud de reconsideración presentada por Ensysa Product Manufacturing Inc. fue rechazada de plano debido a que no cumplió con el requisito de prestar una fianza en reconsideración conforme lo exige el Cap. IV, Sec. 1, Art. C(4) del Reglamento de Subastas de la A.E.E., Reglamento Núm. 4897 de 25 de marzo de 1993.

diciones Especiales y Especificaciones Técnicas del Contrato, el Juez Administrativo señaló:

> Es evidente que con dichos requerimientos se persigue que el licitador agraciado tenga la capacidad de proveer un servicio de calidad y que se pueda probar o constatar la misma. *No se refiere (la cláusula) a la capacidad individual de los empleados del proveedor. Sino a la capacidad de la compañía de unir sus recursos y demostrar, con hechos, sus ejecutorias.* Nótese, que la especificación exige evidencia de que el sistema o sistemas anteriormente diseñados e instalados estén funcionando de forma satisfactoria.
>
> . . . . . . . .
>
> En el caso que nos ocupa, surge del expediente que el Comité Evaluador patentizó el hecho de que las compañías Central Industrial Inc., y KD Contractors, "No han realizado este trabajo anteriormente".
>
> A base de la información que surge del expediente, las compañías Central Industrial y KD Contractors no cumplen con el Artículo 20 de las Condiciones Especiales y Especificaciones Técnicas[,] por lo que debi[eron] haber sido declarados no responsables bajo [el] mencionado criterio de responsabilidad. (Énfasis suplido.) Apéndice de la Petición de *certiorari*, págs. 49–50.

No conformes, la A.E.E. y Central acudieron en *revisión administrativa* al antiguo Tribunal de Circuito de Apelaciones (Tribunal de Apelaciones). Ese foro, bajo fundamentos similares a los que expuso el Juez Administrativo de la A.E.E., denegó expedir el auto solicitado.

Insatisfecha, la A.E.E. acudió ante nos. Plantea que tanto el Juez Administrativo de la A.E.E. como el foro apelativo intermedio, incidieron al descalificar a Central por alegada falta de experiencia para brindar los servicios requeridos en la subasta. Acordamos expedir. Con el beneficio de las comparecencias de ambas partes, resolvemos.

II

De entrada, es menester señalar que los preceptos legales que rigen las relaciones económicas entre

entidades privadas y las agencias gubernamentales están revestidos de un gran interés público y aspiran a promover una sana y recta administración pública. *Fernández & Gutiérrez v. Mun. San Juan*, 147 D.P.R. 824, 829 (1999); *Hatton v. Mun. de Ponce*, 134 D.P.R. 1001, 1005 (1994). A fin de cuentas,

> [l]a buena administración de un gobierno es una virtud de democracia, y parte de una buena administración implica llevar a cabo sus funciones como un comprador con eficiencia, honestidad y corrección para proteger los intereses y dineros del pueblo al cual dicho gobierno representa. *Mar-Mol Co., Inc. v. Adm. Servicios Gens.*, 126 D.P.R. 864, 871 (1990). Véanse: *RBR Const., S.E. v. A.C.*, 149 D.P.R. 836, 848 (1999); *Oliveras, Inc. v. Universal Ins. Co.*, 141 D.P.R. 900, 926–927 (1996); *Hatton v. Mun. de Ponce*, supra.

■ Para dar cumplimiento a esta encomienda, de ordinario se exige que el Gobierno adquiera los materiales y los servicios que necesita a través de subastas públicas. El objetivo principal de toda subasta pública es

> … que haya competencia en las proposiciones[,] de manera que el Estado consiga que se realice la obra al precio más bajo posible. Además, al requerirse que la subasta y el contrato se adjudiquen al postor más bajo[,] se evita que haya favoritismo, corrupción, extravagancia y descuido al otorgarse los contratos. *Justiniano v. E.L.A.*, 100 D.P.R. 334, 338 (1971). Véanse: *Fernández & Gutiérrez v. Mun. San Juan*, supra, pág. 831; *Oliveras, Inc. v. Universal Ins. Co.*, supra, págs. 926–927; *Mar-Mol Co., Inc. v. Adm. Servicios Gens.*, supra, pág. 871; *Cancel v. Municipio de San Juan*, 101 D.P.R. 296, 300 (1973).

■ Ahora bien, lo anterior no implica que las agencias no gocen de ninguna discreción en la evaluación de las distintas propuestas sometidas. *Cuando se trata, como en el presente caso, de la adquisición de servicios técnicos de gran costo y sofisticación, la selección de un proveedor sobre otros puede conllevar decisiones que descansen, no en criterios estrictamente matemáticos, sino en una valoración de la tecnología y los recursos humanos con que cuenta, a la luz de las necesidades presentes y futuras de la agencia.*

■ En Puerto Rico, la Asamblea Legislativa no ha estimado necesario aprobar una ley especial que regule los procedimientos de subasta aplicable a todas las compras gubernamentales. Queda, pues, a la discreción de cada agencia, como entidad con el conocimiento especializado, aprobar un reglamento que establezca el procedimiento y las guías a seguir en sus propias subastas. *L.P.C. & D., Inc. v. A.C.*, 149 D.P.R. 869, 875 (1999); *RBR Const., S.E. v. A.C.*, supra, pág. 850.

■ La Sec. 15(1) de la Ley de la Autoridad de Energía Eléctrica de Puerto Rico, 22 L.P.R.A. sec. 205(1), adopta la política pública anteriormente delineada al disponer, en lo pertinente:

> (1) *Todas las compras y contratos de suministros o servicios, excepto servicios personales, que se hagan por la Autoridad, incluyendo contratos para la construcción de obras de la misma, se harán mediante anuncio de subasta* hecho con suficiente antelación a la fecha de apertura de pliegos de proposiciones, para que la Autoridad asegure el adecuado conocimiento y oportunidad de concurrencia de licitadores. ... La Autoridad podrá aprobar reglamentos para la presentación de licitaciones. (Énfasis suplido.)

■ A tenor con ese mandato —y con el propósito de instituir guías uniformes para la recomendación, adjudicación y aprobación de subastas para la adquisición de bienes y servicios cuyo costo excede de $20,000 dólares— la mencionada corporación pública aprobó el Reglamento de Subastas de la Autoridad de Energía Eléctrica, Reglamento Núm. 4897 de 25 de marzo de 1993.([3])

■ En lo pertinente, el Cap. II, Sec. 10, Arts. A(1) y A(2) del citado Reglamento establece los requisitos que la A.E.E. debe tomar en consideración al momento de adjudicar una subasta, a saber: cumplimiento con las especi-

---

([3]) Este reglamento fue derogado por el Reglamento Núm. 6646 de 24 de julio de 2003. Empero, por tratarse aquí de una controversia que surge con anterioridad a la vigencia de éste, sus disposiciones no aplican al presente caso.

ficaciones; habilidad del licitador para suplir los bienes y/o servicios requeridos en la subasta bajo consideración; la calidad de los materiales, equipos o servicios ofrecidos y su adaptabilidad a las especificaciones establecidas por la entidad adquirente; la responsabilidad económica del licitador; su pericia, *experiencia* e integridad comercial, y el tiempo de entrega o de cumplimiento que se ofrezca. Luego de ponderar todos los factores pertinentes, la subasta se debe adjudicar a favor del postor más bajo cuya oferta responda sustancialmente y cumpla con todas las especificaciones, los términos y las condiciones establecidas en la Invitación a la Subasta.

Es precisamente el factor experiencia —exigido en el mencionado Reglamento— el que está en controversia en el presente caso. Veamos.

## III

Es un hecho no controvertido que la invitación a la subasta en el caso de autos requería que los licitadores presentaran, con sus propuestas, evidencia de experiencia previa y satisfactoria en tareas dirigidas a la rehabilitación de calderas. Esa exigencia, consignada específicamente en el Art. 20 de las Condiciones Especiales y Especificaciones Técnicas del Contrato, establece:

Article 20. *Experience and Facilities*
In addition to the Requirements of Paragraph 5, *Experience and Facilities*, of the Supplementary Instructions to Bidders, *Bidders shall furnish with their proposals evidence satisfactory to PREPA to the effect that they or their represented (sic) have satisfactorily performed the design of systems and installation as covered by these Specifications and which are in satisfactory operation.* (Énfasis suplido.) Apéndice de la Petición de *certiorari*, pág. 91.

En lo referente al alcance de la mencionada disposición contractual —y como fundamento para anular la adjudicación de la subasta que la A.E.E. realizó a favor de Cen-

tral— el Juez Administrativo de la A.E.E. consignó en su resolución que el requerimiento de experiencia no se cumple —como concluyó la A.E.E.— al demostrar la capacidad individual de los empleados del proveedor para desarrollar el servicio solicitado. A su juicio, se requiere estrictamente que la compañía proveedora del servicio haya realizado tareas similares a las que se solicitaban en el pliego de subasta. La A.E.E. entiende que el Juez Administrativo erró en su apreciación. Le asiste la razón. La determinación del Juez Administrativo, dentro de la cual se descarta la *experiencia de los empleados* de Central como factor de cumplimiento de los requisitos establecido por el citado Art. 20, es contraria a derecho.

Para disponer de este asunto, basta con señalar que un sinnúmero de autoridades en la materia no tan sólo consideran viable, *sino necesario*, que la agencia contratante tome la experiencia de empleados, socios, directores y hasta subcontratistas del proveedor con el fin de cumplir con el requisito de experiencia establecido en los pliegos de subasta de un contrato de servicios. Véanse: 1B *McBride & Touhey, Government Contracts: Cyclopedic Guide to Law, Administration, Procedure* Sec. 10.230[5] (2004);[4] D.P. Arnavas, *Government Contract Guidebook*, 3ra ed., Ed. West Group, 2001, pág. 6-23;[5] American Bar Association, *Government Contract Law: The Deskbook for Procurement*

---

[4] En su reciente publicación para el año 2004, McBride & Touhey nos señalan:

*"Experience requirements in an IFB* [Invitation for bids] *are definitive responsibility criteria. It is therefore proper for the contracting officer to consider the past performance of key employees when affirmatively determining a new company's responsibility. ... Similarly, the experience of a technically qualified subcontractor or affiliate may be used to satisfy definitive responsibility criteria relating to experience. ... In addition, the experience of one venturer of a joint venture can be used to determine that a joint venture satisfies a definitive responsibility criterion."* (Énfasis suplido.)

[5] Sobre este particular, el Prof. Donald P. Arnavas establece:

*"Sec. 6.23 Contractor Past Performance*

"... The evaluation should take into account 'relevant' past performance information regarding and offeror's predecessor companies, *key personnel*, and mayor subcontractors, and must consider the currency, relevance, source, and context of the information, and general trends in contractor's performance." (Énfasis suplido.)

*Professionals*, ABA Section of Public Contract Law, 1995, pág. 61. Coincidimos con esa apreciación.

 Ciertamente, en los *contratos de servicios*, la evaluación de un licitador no debe estar orientada en la ficción de que la experiencia de los empleados es un concepto separado o diferente de la experiencia de la compañía. *Después de todo, las personas jurídicas, como lo serían en este caso los proveedores de servicios para la rehabilitación de calderas, no pueden operar si no es a través de seres humanos que les asisten, y que son éstos en última instancia, y no aquéllas, los que pueden ejecutar acciones y acumular experiencia.* Por ello la necesidad de que en el momento en que se vaya a determinar si un licitador cumple con los criterios de experiencia previa se tomen en consideración las habilidades, los conocimientos, las destrezas y el adiestramiento de aquellos que la forman, entiéndase, sus recursos humanos.[6] Así correctamente lo entendió el Comité Permanente de Subasta de la A.E.E. al adjudicar la subasta a favor de Central.

## IV

En el presente caso, al momento de hacer la apertura de la subasta la A.E.E. identificó unos requisitos técnicos con los que el proyecto debía cumplir, entre ellos, claro está, el de la experiencia previa de los licitadores en brindar el servicio de rehabilitación de calderas. Los licitadores sabían las condiciones, los términos y los requisitos exigidos por la A.E.E. Conforme surge del expediente que obra en

---

[6] Al respecto, se nos indica en American Bar Association, *Government Contract Law: The Deskbook for Procurement Professionals*, ABA Section of Public Contract Law, págs. 61–62:

"In service contracts, a contractor's personnel are very important. Therefore, evaluation criteria should address evaluation of proposed personnel, including: education, training, and experience; amount of time they actually will perform under the contract; the likelihood that a proposed new hire will agree to work; impact on other contracts; etc."

nuestro poder, y a la luz de lo que hemos resuelto, la oferta presentada por Central no se apartó de los requisitos y las especificaciones deseadas por la A.E.E.(7) La agencia, con su vasta experiencia y especialización, se encuentra, de ordinario, en mejor posición que nosotros para determinar el mejor licitador, tomando en consideración los factores esgrimidos tanto por la ley como por su Reglamento de Subastas.(8) *Fac. C. Soc. Aplicadas, Inc. v. C.E.S.*, 133 D.P.R. 521, 533 (1993); *Rubin Ramírez v. Trías Monge*, 111 D.P.R. 481, 484–485 (1981). No había razón, ni evidencia

---

(7) Es menester destacar que el requisito de experiencia establecido por la A.E.E., como agencia contratante, debía demostrarse como evidencia satisfactoria para la mencionada corporación pública.

Al respecto, debemos afirmar que de autos se desprende que Central presentó evidencia satisfactoria en cuanto al cumplimiento del requisito de la experiencia, entre ellas: personal altamente cualificado para desarrollar este tipo de trabajo; certificaciones expedidas por la *National Board of Boiler and Pressure Inspectors*, en específico la "R-Stamp" que le certifica como entidad diestra en el manejo de la reparación y rehabilitación de calderas, entre otras.

Resalta la experiencia del Ing. César A. Báez Hernández, Administrador de Proyectos para la División de Centrales Generatrices de Central y anterior empleado de la A.E.E. El ingeniero Báez Hernández, mientras laboraba para la A.E.E., estuvo a cargo de las calderas de la mencionada corporación pública entre los años 1998 al 2001 en la Planta de Palo Seco. En noviembre de 1998 estuvo a cargo de la rehabilitación realizada, con el personal de la A.E.E., a la caldera de la Unidad #1 de la Planta de Palo Seco. En 1999 dirigió el mismo trabajo en la rehabilitación de la Caldera de la Unidad #2 de la misma planta.

Así también resalta la experiencia del Ing. Nicholas F. Márquez, quien actualmente se desempeña como "Quality Manager" de Central, y que según demuestra su hoja de experiencia profesional, ha escrito y desarrollado varios manuales sobre el proceso de rehabilitación de calderas.

(8) Resulta necesario destacar que el comité que en primera instancia evaluó la subasta objeto de litigio estuvo compuesto por altos ejecutivos de la A.E.E., quienes sin lugar a dudas, por la posición que ocupan, poseen la pericia necesaria para evaluar, determinar y recomendar aquellos licitadores que verdaderamente cumplen con las exigencias de la agencia contratante. Entre los miembros del Comité Permanente de Subasta de la A.E.E. se encontraban: el Sr. Luis Figueroa Báez, Director de Finanzas de la A.E.E y Presidente del Comité de Subasta; Ing. Jorge L. Leavitt Rey, Director del Sistema Eléctrico; Lcdo. Wilfredo Pantojas Reyes, Director de Servicios Administrativos; Ing. Valeriano Otero, Director de Transmisión y Distribución; Ing. Milagros Calixto, Directora de Ingeniería; Lcda. María M. Méndez Rivera, Consultora Jurídica; Sr. Luis F. Jiménez Pagán, Jefe de la División de Conservación y Suministros; Ing. David Marrero, Administrador de Proyectos; Ing. Edwin Miranda, Jefe de la División de Conservación y Servicios Técnicos, y el Ing. Edgardo Díaz, Asesor Técnico en Producción.

en récord, que ameritase revocar la determinación del Comité Permanente de Subasta de la A.E.E.

Si bien es cierto que debemos gran deferencia a las decisiones de las agencias administrativas, nada nos impide intervenir cuando estas decisiones son contrarias a derecho. Véanse: Sec. 4.5 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. sec. 2175; *Pacheco v. Estancias*, 160 D.P.R. 409 (2003). La ausencia total de fundamentos razonables de parte del Juez Administrativo de la A.E.E., tanto para anular la subasta como para rechazar la propuesta de Central, nos fuerza a concluir que su decisión, confirmada por el foro apelativo intermedio, fue contraria a derecho. El error señalado fue cometido.

## V

Por los fundamentos expuestos en la opinión que antecede, *se revoca el dictamen emitido por el Tribunal de Apelaciones y se sostiene, por lo tanto, la adjudicación de la subasta a favor de Central.*

La Jueza Asociada Señora Fiol Matta concurrió con el resultado sin opinión escrita.