| | | |
|---|---|---|
| Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>Panel Especial | | |

| | | |
|---|---|---|
| AMERICAN ROOFING OF PUERTO RICO, INC.<br>Recurrente<br><br>v.<br><br>JUNTA DE SUBASTAS ADMINISTRACIÓN DE SERVICIOS GENERALES<br>Recurridos<br><br>SUÁREZ PROFESSIONAL ROOFING, CORP., POWER ROOFING SOLUTIONS, INC., NORECO ROOFING, CORP., V HARD, INC., TROPITECH<br><br>Licitadores Agraciados-Recurridos | KLRA202400391 | *Revisión Judicial* procedente de la Junta de Subastas de la Administración de Servicios Generales<br><br>Caso Núm. 23J-13341<br><br>Sobre: Impugnación de Subasta |

Panel integrado por su presidente, el Juez Bermúdez Torres, el Juez Adames Soto y la Juez Aldebol Mora

Adames Soto, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 20 de noviembre de 2024.

Comparece American Roofing of Puerto Rico (recurrente o American Roofing), mediante recurso de revisión judicial, solicitando la revocación de la *Resolución de Adjudicación Enmendada* emitida por la Junta de Subastas (Junta) de la Administración de Servicios Generales del Gobierno de Puerto Rico (ASG), el 15 de mayo de 2024. Juzga American Roofing que la ASG mostró arbitrariedad, prejuicio y parcialidad en la otorgación de la buena pro de la Subasta Formal Núm. 23J-13341 (Subasta), de la cual resultó en un licitador no elegido.

Evaluados los argumentos con los que el recurrente sostiene que debemos revocar la *Resolución* recurrida, determinamos que no superan los

NÚMERO IDENTIFICADOR

SEN2024_____

criterios deferenciales que dirigen nuestra revisión de las determinaciones administrativas, por lo que corresponde *Confirmar*.

## I. Resumen del tracto procesal

El 18 de abril de 2023, la ASG publicó una *Invitación a Subasta Formal 23J-13341* con el propósito de establecer contratos de selección múltiple para la impermeabilización de techos para edificios localizados en zonas industriales con diferentes sistemas estructurales (techo) para los departamentos, dependencias, agencias e instrumentalidades de la Rama Ejecutiva, las corporaciones públicas y los municipios del Gobierno de Puerto Rico. En atención a lo cual, el 21 de abril de 2023, se celebró una reunión virtual pre-subasta, cuya participación fue obligatoria para los licitadores interesados. Producto de dicha reunión se emitió la *Enmienda I* a los pliegos de subasta, con el propósito de, entre otras, modificar la *Tabla de Ofertar*.

A las pocas semanas, el 8 de mayo de 2023, ASG emitió una nueva *Tabla de Ofertar Enmendada II*. Luego, el 15 de mayo de 2023, se cerró el periodo para someter propuestas, con un total de 16 ofertas sometidas de los siguientes licitadores: (1) Master Roofing, Inc., (2) Star Perfect Roofing, Inc., (3) J.C. Remodeling, Inc., (4) Suárez Professional Roofing, Corp., (5) Power Roofing Solutions, Inc., (6) American Roofing of PR, Inc., (7) Noreco Roofing, Corp., (8) R. T. International Roofer's, Inc., (9) V Hard, Inc., (10) PR Elastomeric Membrane, Inc. (PREMI), (11) Reyes Contractor Group, Inc., (12) William Y. Maldonado/ DBA Constructora del Centro PR, (13) FM Home Enterprises, Inc., (14) Tropitech, Inc., (15) JN Contractors, Inc., (16) Sellado de Techo La Familia, LLC.

Evaluadas tales propuestas, contando con el insumo de PRIDCO[1] y del *Área de Adquisiciones* de la ASG, siendo la subasta una de selección múltiple, se adjudicó la buena pro a cinco (5) licitadores, con el fin de suplir

---

[1] Compañía de Fomento Industrial del Gobierno de Puerto Rico, por sus siglas en inglés.

los servicios requeridos en la Subasta, a las distintas zonas geográficas de la Isla. Los licitadores agraciados fueron: Suárez Professional Roofing, Corp. (Zonas: Metro, Este, Norte y Sur); Power Roofing Solutions, Inc. (Zonas: Este Norte y Sur); Noreco Roofing, Corp. (Zonas: Metro, Este, Norte y Sur); V Hard, Inc. (Zonas: Metro, Este, Norte y Sur) y; Tropitech (Zona: Metro). De conformidad, el 13 de junio de 2023, la Junta notificó dicho resultado a los licitadores participantes mediante *Resolución de Adjudicación*. La Junta hizo constar en la referida notificación que las distintas ofertas presentadas por los licitadores fueron evaluadas de manera integrada, tomando como base: (1) precio[2]; (2) cumplimiento con las instrucciones generales, términos, condiciones y especificaciones (un total de 39 partidas), y; (3) si la oferta representaba el mejor valor para el Gobierno de Puerto Rico.[3] Aclaró que, "el mejor valor" no necesariamente correspondía al precio más bajo ofrecido, según fue previsto en el pliego de la subasta y el derecho aplicable.[4] En síntesis, la Junta consideró los siguientes elementos al adjudicar la buena pro:

| Licitador agraciado | Precio por Zona | Cumplimiento con Términos y Condiciones (39 Partidas) |
|---|---|---|
| Suarez Professional Roofing Corp. | $1,058.72 (Zona Metro, Este, Norte y Sur) | 92% - 100% |
| Power Roofing Solutions, Inc. | $653.50 (Zona Este), $883.60 (Zona Norte y Sur) | 82% - 92% |
| Noreco Roofing, Corp. | $1,205.30 (Zona Metro, Este, Norte y Sur) | 87% - 92% |
| V. Hard, Inc. | $939.90 (Zona Metro y Este), 1,109.92 (Zona Norte), $1,102.10 (Zona Sur) | 74% - 82% |
| Tropitech | $2,724.56 (Zona Metro) | 72% |

---

[2] Con relación al precio, se evaluaron:
- Los precios más competitivos:
  - en todas las partidas como agregado, al sumar las 39 partidas establecidas en la *Tabla de Ofertar Enmendada II*
  - en las partidas que se estiman se utilizaran con más frecuencia
- La cantidad y porcentaje de partidas de cada licitador que estaban entre los tres precios más competitivos al analizarlas individualmente.
- El porcentaje de precios razonables mínimo de setenta por ciento (70%).

La Junta de Subastas añadió que, de lo que constituye un precio razonable, se utilizó un límite de hasta 300% sobre el precio más bajo de cada partida. (Pág. 33 del Apéndice del recurso de revisión judicial).

[3] *Resolución de Adjudicación Enmendada*, pág. 30 del Apéndice del recurso de revisión judicial.

[4] *Id.*

KLRA202400391

En la referida *Resolución* fueron identificados los licitadores no agraciados, junto a una explicación para tal rechazo, que en lo pertinente a American Roofing, consistió en lo siguiente:

> [I]ncluyó documentos requeridos, tales como, la fianza, copia del certificado vigente del RUL, y oferta firmada. **Sin embargo, en las columnas de tiempo de entrega solo contienen guarismos. Por ejemplo, indican "35" o "45", sin especificar si son días, semanas o años. Sobre esto, el Pliego de la Subasta es claro cuando indica en el inciso 4 de las Condiciones Generales que "[e]l Licitador deberá informar en su oferta el término en que se entregarán los bienes, en que se completarán las obras o se prestarán los servicios incluidos en su oferta indicando los días, semanas o meses.**" Igualmente, en la Sección II, sobre ofertas admisibles o inadmisibles, dispone que no se considerarán las ofertas que contengan frases, párrafos o comentarios ambiguos, incompletos, indefinidos o que resten certeza a la oferta. No nos compete asumir o adivinar qué es lo que quiso o pretendió decir un licitador. El así hacerlo sería una actuación arbitraria de nuestra parte. De igual manera, en una Subasta no se permite que nos comuniquemos con el licitador para que corrija un error en su oferta. Si un foro con mayor jerarquía entiende que la omisión descrita, no debe ser objeto de descalificación, y que el suponer lo que debió decir no sería una actuación indebida de un foro adjudicador, no tendríamos problemas en adjudicarlo. Pero como hemos dicho, en este momento, entendemos que sería exceder nuestras facultades. Considerando esta oferta una que no brinda certidumbre en los términos de entrega y que incumple con términos y condiciones, rechazamos la misma[5]. (Énfasis provisto).

Es así como, en desacuerdo, American Roofing recurrió inicialmente ante nosotros mediante recurso de revisión judicial, en el caso identificado con el alfanumérico KLRA202300440, esgrimiendo entre sus señalamientos de error uno de índole jurisdiccional, sobre error en la notificación de la adjudicación. Al coincidir con el referido señalamiento de umbral determinamos, mediante *Sentencia* de 20 de febrero de 2024, que dicha notificación de subasta resultaba defectuosa, toda vez que no advirtió de manera adecuada sobre el derecho que tenía un licitador no agraciado de solicitar reconsideración del dictamen ante la propia ASG, según así lo proveía la *Ley de la Administración de Servicios Generales para la Centralización de las Compras del Gobierno de Puerto Rico*, 3 LPRA sec. 9831

---

[5] *Id.* en la pág. 35.

*et seq.*, y la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico,* 3 LPRA sec. 9601 *et seq.* En consecuencia, ordenamos la devolución del asunto a la agencia administrativa, para que ajustara la notificación a lo discutido.

De conformidad, el 15 de mayo de 2024, la ASG emitió una *Resolución de Adjudicación Enmendada,* en la cual incluyó la información pertinente que fue omitida en la notificación. Ya subsanada la notificación, el 4 de junio de 2024, la recurrente radicó ante la Junta Revisora de la ASG un escrito titulado *Revisión Administrativa de Subasta Formal 23J-13341, Solicitud de Orden en Auxilio de Jurisdicción o en Solicitud de Paralización de los Procedimientos a tenor con el Artículo 4.9 Inciso (6) del Reglamento 9230 del 8 noviembre del 2020,* que no fue atendida dentro del término dispuesto por ley, por lo que acudió ante nosotros haciendo los siguientes señalamientos de error:

**PRIMER ERROR SEÑALADO:**

ERRÓ LA JUNTA DE SUBASTAS DE LA ADMINISTRACIÓN DE SERVICIOS GENERALES AL INCURRIR EN ARBITRARIEDAD, PERJUICIO Y PARCIALIDAD AL EXCLUIR SELECTIVAMENTE A ALGUNOS LICITADORES DE CUMPLIR CON LOS TÉRMINOS Y CONDICIONES FUNDAMENTALES DE LA SUBASTA Y DESCALIFICAR AL LICITADOR RECURRENTE, AMERICAN ROOFING, POR ALEGADAMENTE NO CUMPLIR CON UNO DE LOS TÉRMINOS Y CONDICIONES. EN ADICIÓN, NO INCLUYÓ EN SU RESOLUCIÓN DE ADJUDICACIÓN ENMENDADA UN ANÁLISIS TÉCNICO Y TOTALIDAD DE LOS DOCUMENTOS QUE SUSTENTAN EL MISMO, CUANDO SE PROPONE DESCALIFICAR UNA PROPUESTA, TAL COMO LO EXIGE LA SECCIÓN 7.3.16 DEL REGLAMENTO 9230, REGLAMENTO UNIFORME DE COMPRAS Y SUBASTAS DE BIENES, OBRAS Y SERVICIOS NO PROFESIONALES DE LA ADMINISTRACIÓN DE SERVICIOS GENERALES DEL GOBIERNO DE PUERTO RICO.

**SEGUNDO ERROR SEÑALADO**

ERRÓ LA HONORABLE JUNTA DE SUBASTAS AL EMITIR UNA RESOLUCIÓN DE ADJUDICACIÓN ENMENDADA QUE VIOLENTA EL DEBIDO PROCESO DE LEY DE LOS LICITADORES NO AGRACIADOS

**TERCER ERROR SEÑALADO**

ERRÓ LA JUNTA DE SUBASTAS DE LA ADMINISTRACIÓN DE SERVICIOS GENERALES AL COMETER ERROR EN LA ADJUDICACIÓN DE 31 PARTIDAS DE UN TOTAL DE 39, AL

UTILIZAR UNA TABLA DE COMPARACIÓN DE OFERTAS ERRÓNEA Y DISTINTA A LA TABLA DE OFERTAR ENMENDADA II-N5/5/2023 PARA LA SUBASTA

Este Tribunal, mediante *Resolución* del 12 de agosto de 2024, otorgó un término de 30 días a la parte recurrida para que se expresase. Transcurrido dicho término sin que dicha parte se expresara, damos por perfeccionado el recurso y procedemos a resolver.

## II. Exposición de Derecho

### A. Subastas

El procedimiento de subastas gubernamentales está revestido del más alto interés público. *CD Builders v. Mun. Las Piedras*, 196 DPR 336, 343-344 (2016); *Maranello et al. v. O.A.T.*, 186 DPR 780, 789 (2012). Debido a que la adjudicación de las subastas gubernamentales conlleva el desembolso de fondos del erario, "la consideración primordial al momento de determinar quién debe resultar favorecido en el proceso de adjudicación de subastas debe ser el interés público en proteger los fondos del pueblo de Puerto Rico." *Cordero Vélez v. Municipio de Guánica*, 170 DPR 237, 245 (2007). A su vez, "las subastas gubernamentales buscan proteger los intereses del pueblo, procurando conseguir los precios más bajos posibles; evitar el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia; el descuido al otorgarse los contratos, y minimizar los riesgos de incumplimiento". *Aluma Const. v. A.A.A.*, 182 DPR 776, 783 (2011); *Accumail P.R. v. Junta Sub. A.A.A.*, 170 DPR 831, 827 (2007).

Ahora bien, nuestro Tribunal Supremo ha resuelto que existirán ocasiones donde el precio más bajo no obrará como el factor decisivo al otorgar la buena pro de una subasta. Esto, debido a que las agencias gozan de discreción en la evaluación de las propuestas, para lograr alcanzar la oferta que represente el mejor valor. *Empresas Toledo v. Junta de Subastas*, 168 DPR 771, 780 (2006), citando a *AEE v. Maxon*, 163 DPR 434, 440, 444 (2004).

A tenor con el propósito que persigue la adquisición de bienes por el gobierno, la Asamblea Legislativa aprobó la *Ley de la Administración de Servicios Generales para la Centralización de las Compras del Gobierno de Puerto Rico de 2019,* Ley Núm. 73-2019, según enmendada, 3 LPRA sec. 9831 *et seq* (Ley Núm. 73-2019). Se identificó como objetivo de esta legislación, unificar el poder de compras de las distintas agencias en una sola entidad, la ASG, a través de la cual se lograrán ahorros significativos en todos los procesos de adquisición gubernamental.[6]

Para instrumentalizar el articulado de la Ley Núm. 73-2019, la ASG promulgó el *Reglamento Uniforme de Compras y Subastas de Bienes, Obras y Servicios No Profesionales de la Administración de Servicios Generales del Gobierno de Puerto Rico*, Reglamento Núm. 9230 del 18 de noviembre de 2020 (Reglamento 9230). En lo pertinente a la controversia ante nuestra consideración, el Reglamento 9230 discute lo que se entenderá como una *desviación permisible*. Allí se explica que, en el contexto de las normas de adjudicación, "[l]a Junta de Subastas se reserva el derecho de obviar cualquier informalidad o diferencia de menor importancia en los términos y condiciones, si cumple con el propósito para el que se solicitan y resulta beneficioso para el Gobierno de Puerto Rico". *Id.* en la pág. 116. Añade que, dichas "desviaciones no podrán afectar sustancialmente la calidad, capacidad o características esenciales de los artículos o servicios solicitados". *Id.* Sección 7.3.17, pág. 159.

Por otro lado, si en la evaluación de una propuesta la Junta identifica un incumplimiento con las especificaciones y condiciones establecidas en el pliego, y estas se utilizan como fundamento para descalificar o rechazar la oferta, "se deberá exponer claramente el fundamento de tal determinación, junto con el análisis técnico que se llevó a cabo y la totalidad de los documentos que sustentan el mismo". *Id.* Sección 7.3.16 en la pág. 107.

---

[6] Véase Exposición de Motivos de la Ley Núm. 73-2019.

KLRA202400391

**B. Deferencia**

Es norma de derecho reiterada que los foros revisores han de conceder gran deferencia y consideración a las decisiones de las agencias administrativas, dado a la vasta experiencia y conocimiento especializado sobre los asuntos que le fueron delegados. *Graciani Rodríguez v. Garage Isla Verde, LLC.,* 202 DPR 117, 126 (2019). Por lo tanto, **un recurso de revisión judicial ha de limitarse a determinar si la agencia actuó arbitrariamente, ilegalmente o de manera tan irrazonable que su actuación constituyó un abuso de discreción**. (Énfasis provisto). *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 821-823 (2012). La revisión judicial de las decisiones administrativas tiene como fin primordial asegurarse que las agencias desempeñen sus funciones conforme a la ley. *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 891-892 (2008).

La descrita normativa sobre deferencia tiene su génesis en el principio de que son los organismos administrativos los que cuentan con el conocimiento especializado sobre los asuntos que por ley se les han delegado. *Asoc. Fcias. v. Caribe Specialty et al. II.*, 179 DPR 923, 940 (2010). En este ejercicio, el Tribunal Supremo ha sido enfático en que las determinaciones de hechos de organismos y agencias públicas tienen a su favor una presunción de regularidad y corrección, que debe ser respetada mientras la parte que las impugne no produzca suficiente evidencia para derrotarla. *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 744 (2012); *Pereira Suárez v. Jta. Dir Cond.*, 182 DPR 485, 511 (2011); *Camacho Torres v. AAFET,* 168 DPR 66, 91 (2006); *Otero v. Toyota*, 163 DPR 716, 729 (2005).

Es decir, quien las impugne tiene el deber insoslayable, para prevalecer, de presentar ante el foro judicial la evidencia necesaria que permita, como cuestión de derecho, descartar la presunción de corrección de la determinación administrativa. El peso de la prueba descansa entonces

sobre la parte que impugna la determinación administrativa. *Camacho Torres v. AAFET, supra,* pág. 91. En resumen, "la revisión judicial de las determinaciones administrativas se limita a determinar si la actuación administrativa fue razonable y solo cede cuando está presente alguna de las siguientes situaciones: (1) cuando la decisión no está basada en evidencia sustancial; (2) cuando el organismo administrativo ha errado en la aplicación de la ley; y (3) cuando ha mediado una actuación irrazonable o ilegal". *Costa Azul v. Comisión,* 170 DPR 847, 852 (2007).

En el ámbito de las subastas gubernamentales la deferencia a la determinación administrativa se mantiene bajo los parámetros ya señalados. De hecho, la junta de subastas de la agencia o municipio goza de amplia discreción en la evaluación de las propuestas sometidas ante su consideración. *Caribbean Communications v. Pol. de P.R., supra,* pág. 1006; *Accumail P.R. v. Junta Sub. A.A.A.,* 170 DPR 821, 828-829 (2007). Además, "[l]a agencia, con su vasta experiencia y especialización, se encuentra, de ordinario, en mejor posición que [el tribunal] para determinar el mejor licitador tomando en consideración los factores esgrimidos tanto por la ley como su Reglamento de Subastas". *A.E.E. v. Maxon,* 163 DPR 434, 444 (2004). Al respecto, nuestro Tribunal Supremo ha resaltado:

> [E]n el ejercicio de sus facultades se les reconoce discreción al momento de considerar las licitaciones, rechazar propuestas y adjudicar la subasta a favor de la licitación que estime se ajusta mejor a las necesidades particulares de la agencia y al interés público en general. Como consecuencia de ello, los tribunales no debemos intervenir con el rechazo de una propuesta o la adjudicación de una subasta, salvo que la determinación administrativa adolezca de un abuso de discreción, arbitrariedad o irracionabilidad. *CD Builders v. Mun. Las Piedras, supra,* en las págs. 348-349.

A tenor, una vez se adjudique la buena pro, los tribunales no deben sustituir el criterio de la agencia o junta concernida, **a menos que se demuestre que la decisión se tomó de forma arbitraria o caprichosa, o que medió fraude o mala fe**. (Énfasis provisto). *Torres Prods. v. Mun.*

*Aguadilla*, 169 DPR 886, 898 (2007); *Empresas Toledo v. Junta de Subastas*, 168 DPR 771, 783 (2006).

De no haber mediado las excepciones antes indicadas, ningún postor tiene derecho a quejarse cuando otra proposición es elegida como la más ventajosa. *Torres Prods. V. Junta Mun. Aguadilla, supra.* Es decir, ningún postor tiene un derecho adquirido en ninguna subasta. La determinación de la agencia será sostenida si cumple con el estándar de razonabilidad. *Accumail P.R. v. Junta Sub. A.A.A., supra,* pág. 829. A la luz de lo anterior, **quien pretenda impugnar una adjudicación realizada por una Junta tendrá que demostrar fehacientemente que el criterio de selección se desvió de tal manera del correcto proceder, que la decisión tomada es arbitraria**. En consonancia, **la parte promovente de la impugnación viene obligada a identificar en el expediente de la subasta aquella prueba que menoscabe la razonabilidad de la decisión tomada.** (Énfasis provisto). *Misión Ind. P.R. v. J.P.*, 146 DPR 64, 134-135 (1998).

### III. Aplicación del Derecho a los hechos

Según adelantamos, American Roofing argumenta, por una parte, que la Junta de Subastas actuó de manera arbitraria, parcializada y caprichosa al descalificarla por incumplir con uno de los términos y condiciones contenidos en el pliego de subasta —limitarse a exponer el tiempo que tardaría el servicio en guarismos y no incluir las palabras días, semanas o meses— al compararse con el hecho de que otros licitadores obviaron incluir la marca y modelo de algunos productos, pero la Junta no los descalificó. Por otra parte, sobre el mismo asunto, juzga el recurrente que la omisión de los términos precisos sobre días, semanas o meses para realizar el servicio que se le imputó como causa para descalificar constituía una *desviación permisible,* que no debió conllevar el rechazo de sus ofertas. En este sentido, insiste ante nosotros que fue descalificada por un tecnicismo de interpretación que pudo ser fácilmente corroborado, como lo permite la

Sección 7.3 del Reglamento Núm. 9230, *supra,* y la sección 9 sobre los criterios de *Evaluación y Adjudicación* contenidos en el pliego de la subasta.

Sobre el argumento acerca de la información que los licitadores agraciados obviaron cabe apuntar que, aunque en la *Resolución de Adjudicación Enmendada* se mencionó que, en efecto, hubo licitadores que no incluyeron marca y modelo en algunas partidas, la Junta precisó que en esas partidas se hacía referencia al material a ser utilizado, pero que, en el caso de las partidas esenciales de sellado, dichos licitadores sí especificaron las marcas, por lo que se entendió que lo omitido era una desviación permisible. Ante lo cual, cabe recordar aquí que en nuestra labor revisora prima el principio de que la agencia, como ente perito en su materia, tiene la discreción para determinar cuáles desviaciones son tan insignificantes que no poseen inherencia en la calidad del servicio solicitado, y en este caso la determinación recurrida no supera el umbral de nuestra revisión sobre lo que podríamos considerar como irrazonable.

Por otra parte, American Roofing esgrime que, antes de que la Junta le descalificara por limitarse a exponer el tiempo que tardaría el servicio que licitó en guarismos, y no incluir las palabras *días, semanas o meses*, esta debió solicitarle que aclarara tal información. Sin embargo, cabe notar que, aunque la Junta tiene la facultad para comunicarse con los licitadores, no tiene un deber de inquirir sobre información que no le fue provista. Incluso, el propio pliego de la subasta dispone que la Junta **podrá** comunicarse con un licitador, pero que "el propósito de estas aclaraciones no es obtener información adicional que no se presentó originalmente en la oferta, sino obtener una mejor comprensión del contenido proporcionado".[7] De este modo, no coincidimos con la recurrente al promover que la Junta tenía un

---

[7] Debido a que el pliego de la subasta no surge del expediente, este Tribunal toma conocimiento, al amparo de la Regla 201 de Evidencia, 32 LPRA, Ap. VI, R. 201, del pliego según publicado en la página electrónica de la Administración de Servicios Generales (https://asgwebpageprodstorage.azureedge.net/media/licitaciones/PLIEGO_Y_ANEJOS-_SUBASTA_FORMAL_23J-13341.pdf), pág. 16.

KLRA202400391

deber de comunicarse y auscultar sobre la propuesta, sino que ello ubicaba dentro de la discreción reconocida a esta en el mismo pliego de subasta. Más importante aún, a la luz de lo exigido por el pliego de subasta, no podemos tildar de irrazonable el ejercicio decisorio de la Junta al determinar que resultaba necesario que el recurrente precisara el tiempo en que rendiría el servicio, con referencia a días, semanas o meses.

Además, American Roofing arguye que la *Resolución de Adjudicación Enmendada* adolece de varios defectos, entre estos: 1) que no ofrece un análisis técnico para justificar la descalificación de su oferta, según exige la sección 7.3.16 del Reglamento Núm. 9230, *supra,* y; 2) que no consigna en sus determinaciones de hechos, ni conclusiones de derecho, las recomendaciones de PRIDCO, a pesar de que fueron acogidas parcialmente debido a su pericia. Es su postura que esto impidió que lograse ejercer plenamente su derecho a la revisión como licitador no agraciado.

Sin embargo, al verificar el acápite sobre licitadores no agraciados contenido en la *Resolución de Adjudicación Enmendada,* la Junta de Subastas fundamentó que el rechazo de la oferta fue debido a que esta no brindaba certidumbre en los términos de entrega e incumplía con los términos y condiciones del pliego. Señaló que al incluir solamente guarismos incumplió con el inciso 4 de la sección de Condiciones Generales del pliego de la subasta, que le exige el licitador "informar en su oferta el término en que se entregarán los bienes, en que se completarán las obras o se prepararán los servicios incluidos en su oferta indicando los días, semanas o meses".[8] En consecuencia, cabe reconocer que la Junta sí fundamentó su rechazo de la oferta de la recurrente con los estándares y términos que regían la subasta, según establecidos en el pliego. En cuanto a ofrecer un análisis técnico del rechazo, como vimos, la descalificación de American Roofing se

---

[8] *Resolución de Adjudicación Enmendada,* pág. 35 del Apéndice del recurso de revisión judicial (Énfasis provisto).

dio por una omisión del requisito hasta aquí reiterado, lo cual no invita un análisis técnico, como sería un rechazo fundado en discrepancias en precios, como ocurrió con otros licitadores.

Concerniente a las recomendaciones de PRIDCO, la Junta incluyó cuáles fueron las recomendaciones que utilizó en su análisis, incluso, mencionó cuáles de estas no acogió y el porqué de su rechazo.[9]

Asimismo, la recurrente argumenta que la Junta de Subasta incidió en la adjudicación de la mayoría de las partidas, arguyendo que en las *Tablas de Precios (por zonas)* anejadas a la *Resolución*, no se utilizaron las unidades de medidas establecidas en la *Tabla para Ofertar Enmendada II.* Señaló que algunas partidas estaban adjudicadas por unidad y otras en toneladas, y no en pies cuadrados, mientras que otras estaban medidas en pies cuadrados, en lugar de yardas cúbicas. A pesar de haber levantado tal señalamiento, American Roofing no profundiza sobre en qué medida o por qué razón dichos cambios invalidarían la adjudicación de la buena pro, o colocaría en riesgo cientos de miles de dólares del erario. Sobre ello, dicha parte solo se limita a argumentar que el licitador agraciado pudiese exigir que se le pagase la partida que le fue adjudicada, y no la indicada en la *Tabla para Ofertar Enmendada II.* Tal línea argumentativa no nos persuade, mucho menos la estimamos como suficiente en derecho para intervenir con un dictamen administrativo al cual le acompaña una presunción de corrección.

Finalmente, American Roofing argumenta que fue la licitadora más competitiva, pero sin ponernos en posición para permitirnos evaluar tal aseveración. Lo anterior, debido a que del expediente no se desprende evidencia o detalle alguno sobre su propuesta, ni como esta se compara con las ofertas presentadas por los licitadores agraciados.

---

[9] *Resolución de Adjudicación Enmendada*, pág. 32 del Apéndice del recurso de revisión judicial.

KLRA202400391

En definitiva, examinada en su totalidad la *Resolución de Adjudicación Enmendada*, concluimos que American Roofing no ha logrado superar el estándar de revisión que se nos impone al considerar las impugnaciones de subastas, en tanto no apreciamos que en ella mediara arbitrariedad, capricho, fraude o mala fe. La función revisora que nos compete asumir no nos llama a sustituir el criterio de la agencia recurrida por el nuestro, sino que está limitada a inquirir sobre la presencia de algunos de dichos elementos, pero en su ausencia, solo cabe ceder a la deferencia que debemos al organismo especializado. En ausencia de los elementos ya discutidos, este Tribunal está impedido de intervenir con la determinación del foro recurrido, solo procede *Confirmar.*

## IV. Parte dispositiva

Por los fundamentos expuestos, *Confirmamos* la *Resolución de Adjudicación Enmendada* emitida por la Junta de Subastas de la Administración de Servicios Generales.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones