ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| RK RIVERA, LLC<br><br>RECURRENTE<br><br>V.<br><br>CORPORACIÓN DEL PROYECTO ENLACE DEL CAÑO MARTÍN PEÑA<br><br>RECURRIDA | KLRA202400638 | *REVISIÓN JUDICIAL* procedente de la Corporación del Proyecto Enlace del Caño Martín Peña<br>_____<br>Solicitud de Propuesta Núm.: SDP-2024-017<br><br>_____<br>SOBRE:<br>Implantación de Plataforma de Gestión de Casos, Portal de Servicio al Cliente para la Corporación del Proyecto Enlace del Caño Martín Peña |

Panel integrado por su presidente el Juez Figueroa Cabán, el Juez Salgado Schwarz y el Juez Monge Gómez.

Salgado Schwarz, Carlos G. Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 27 de enero de 2025.

Comparece RK Rivera, LLC ("Recurrente" o "RK Rivera") y solicita que revisemos la determinación de la Corporación del Proyecto Enlace del Caño Martín Peña ("la Corporación" o "Recurrida") relacionada a la solicitud de propuestas de servicios profesionales para brindar la asesoría de servicios en la Implantación de Plataforma de Gestión de Casos, Portal de Servicio al Cliente para la Corporación del Proyecto Enlace del Caño Martín Peña, Solicitud de Propuesta Núm. 2024-017.

Por los fundamentos que exponemos a continuación, se **confirma** la adjudicación de la solicitud de propuesta aquí recurrida.

-I-

Según surge del expediente de epígrafe, el 8 de marzo de 2024 la Corporación invitó a varios proponentes a presentar

sus propuestas referentes a los servicios profesionales para la Implantación de Plataforma de Gestión de Casos, Portal de Servicio al Cliente para la Corporación del Proyecto Enlace del Caño Martín Peña. El 11 de abril de 2024, la Corporación recibió la propuesta de Nexvel Consuling, LLL ("Nexvel") y, al día siguiente, la de RK Rivera. Al finalizar el proceso, el Comité Evaluador recomendó la contratación de Nexvel. Según alega RK Rivera la carta de adjudicación notificada el 30 de mayo de 2024 no proveyó una razón justificada por la cual Nexvel haya sido el agraciado. Así las cosas, el 8 de agosto de 2024, RK Rivera acudió ante esta Curia solicitando revisión judicial. El 16 de agosto de 2024 desestimamos el recurso por falta de notificación adecuada. Posteriormente, el 25 de septiembre de 2024, la Corporación le notificó a la Recurrente el *Aviso de Adjudicación de Propuesta SDP 2024-017*[1], en el cual recomendó nuevamente la propuesta de Nexvel.

Inconforme con dicha determinación, el 7 de octubre de 2024, la Recurrente le envió a la Recurrida una comunicación solicitando reconsideración sobre la adjudicación de propuesta, por entender que Nexvel no cumplió con todos los requisitos.[2] Sin embargo, según alega RK Rivera, dicha solicitud no fue contestada. Así las cosas, el 15 de noviembre de 2024, RK Rivera acude ante nos mediante recurso de revisión administrativa alegando los siguientes señalamientos de error:

> **ERRÓ EL CAÑO AL NO ADJUDICAR LA SOLICITUD DE PROPUESTA NÚM. 2024-017 CONFORME A DERECHO.**
>
> **ERRÓ EL CAÑO AL NO ADJUDICAR LA BUENA PRO A RK RIVERA QUIEN CUMPLIÓ CON TODOS LOS REQUERIMIENTOS Y SU OFERTA ES MÁS BENEFICIOSA PARA EL INTERÉS PÚBLICO.**

---

[1] Véase Apéndice 4 del recurso de revisión, págs. 64-69.
[2] Véase Apéndice 5 del recurso de revisión, págs. 70-72.

Posteriormente, el 18 de diciembre de 2024, la Corporación presentó su correspondiente escrito. Sostiene la Recurrida que la contratación objeto de controversia se trata de servicios profesionales, por lo que se rige por las Guías de Contratación de Servicios Profesionales o Consultivos[3]. Además, alega que dicha guía no exige que se realice una subasta informal o formal, sino que se limita a que se soliciten propuestas, se evalúen y se haga una selección a discreción de la Junta de Directores de la Corporación del Proyecto Enlace del Caño Martín Peña.

-II-

## A. Contratos con el Gobierno de Puerto Rico

El proceso de contratación de servicios por las agencias del gobierno está revestido del más alto interés público, pues busca promover la inversión adecuada, responsable y eficiente de los recursos del Estado.[4] Cabe resaltar que el mecanismo de propuestas se destaca por su mayor informalidad y flexibilidad, así como por el grado de discreción que se le confiere a la entidad pública en la consideración de la propuesta recibida, en comparación con la subasta tradicional.[5] Además, a diferencia del procedimiento formal de subasta el requerimiento de propuesta permite la compra negociada y confiere a los licitadores la oportunidad de revisar y modificar sus ofertas antes de la adjudicación de la buena pro.[6]

Por su parte, el Tribunal Supremo ha reiterado que "*las agencias gozan de una amplia discreción en la evaluación de las propuestas sometidas ante su consideración*", pues estas poseen "*una vasta experiencia y especialización que la*

---

[3] Véase Apéndice 1 de la Recurrida, págs. 1-30.
[4] *Super Asphalt v. AFI y otro*, 206 DPR 803, 820 (2021).
[5] *Maranello et al. v. O.A.T.*, 186 DPR 780, 790 (2012), citando a *R & B Power v. E.L.A.*, 170 DPR 606, 623 (2007).
[6] *R & B Power v. E.L.A.*, 170 DPR 606, 621 (2007).

*colocan en mejor posición que el foro judicial para seleccionar el postor que más convenga al interés público.*"[7]

Ahora bien, independientemente de que se trate de un procedimiento de subasta formal o de un requerimiento de propuestas, el Tribunal Supremo ha resuelto que, una vez se adjudique la buena pro, los tribunales no debemos sustituir el criterio de la agencia o junta concernida, a menos que se demuestre que la decisión que se tomó fue de forma arbitraria o caprichosa, o que medió fraude o mala fe.[8]

De otra parte, es norma establecida que las agencias pueden adjudicar la subasta al postor que se considere más apropiado, aun cuando su oferta no sea la más baja, si ello sirve al interés público. Es decir, el hecho de que un licitador presente la propuesta más baja no obliga al organismo público a adjudicar la subasta a dicho licitador.[9] Existen otras consideraciones de interés público, que pueden "*conllevar decisiones que descansen, no en criterios estrictamente matemáticos, sino en una valoración de la tecnología, y los recursos humanos con que cuenta esta, a la luz de las necesidades presentes y futuras de la agencia.*"[10] Así vemos que las agencias gozan de amplia discreción al considerar las licitaciones, rechazar propuestas y adjudicar la subasta a favor de la licitación que estime se ajusta mejor a las necesidades particulares de la agencia y al interés público en general.[11]

---

[7] *Caribbean Communications v. Pol. de P.R.*, 176 DPR 978, 1006 (2009), citando a *Accumail P.R. v. Junta Sub. A.A.A.*, 170 DPR 821 (2007); *Perfect Cleaning v. Cardiovascular*, 172 DPR 139 (2007); *Empesas Toledo v. Junta de Subastas*, 168 DPR 771, 783 (2006); y a *AEE v. Maxon*, 163 DPR 434, 444 (2004).
[8] *Caribbean Communications v. Pol. de P.R.*, 176 DPR 978, 1006 (2009).
[9] *Empresas Toledo v. Junta de Subastas*, 168 DPR 771, 786 (2006).
[10] *Íd.*, a la pág.779, citando a *A.E.E. v. Maxon*, 163 DPR 434 (2004).
[11] *CD Builders v. Mun. Las Piedras*, 196 DPR 336 (2016).

## B. **Guía de Contratación**

A tenor con la *Ley para el Desarrollo Integral del Distrito de Planificación Especial del Caño de Martín Peña[12]* y la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico[13]* se creó la Guía de Contratación de Servicios Profesionales de la Corporación del Proyecto ENLACE del Caño Martín Peña. Entre los propósitos de esta Guía se encuentra establecer los criterios y uniformar los procedimientos internos para la evaluación y selección de proveedores de servicios profesionales.[14] En lo referente al caso de epígrafe, las Guía señala que la Corporación documentará el proceso seguido para evaluar las propuestas.[15] Ahora bien, cuando se trata de evaluar las propuestas de varios proveedores, la Guía establece un procedimiento particular. Bajo dicho escenario, "*[e]l comité de evaluación examinará y analizará las propuestas, de conformidad con los parámetros de la solicitud de propuestas, y documentará y presentará por escrito los resultados y una recomendación sobre la selección del proveedor(a) para la consideración del Director(a) Ejecutivo(a).*"[16] Posteriormente, el Director Ejecutivo presentará su recomendación. La Junta tomará la determinación sobre la selección del proveedor, así como los términos y condiciones para otorgar el contrato.[17]

-III-

En el caso de autos, RK Rivera arguye que la determinación de la Corporación fue arbitraria y caprichosa y no se ajustó a las necesidades solicitadas en la propuesta. Luego de haber examinado la totalidad del expediente,

---

[12] Ley Núm. 489 de 24 de septiembre de 2004, según enmendada.
[13] Ley Núm. 38 de 30 de junio de 2017, según enmendada.
[14] Véase la Guía para la Contratación y Gerencia de Contratos de Servicios Profesionales o Consultivos de la Corporación del Proyecto ENLACE del Caño Martín Peña, 2014, pág. 2.
[15] *Íd.*, a la pág. 13.
[16] *Íd.*
[17] *Íd.*, a la pág. 14.

concluimos que no le asiste la razón a la parte recurrente. Por el contrario, este Tribunal concluye que no se reúnen los criterios legales que legitimarían nuestra intervención. Estamos convencidos de que la determinación recurrida se hizo de conformidad con las facultades legales que le asisten a la Corporación. Tampoco surge del expediente evidencia alguna que refleje que la decisión emitida por la Recurrida surgiera de un proceso arbitrario o fraudulento. Veamos.

La Recurrente impugnó la determinación de la Corporación alegando que la agraciada, Nexvel, no incluyó todos los elementos técnicos solicitados por la Corporación. En su recurso, RK Rivera hizo cuatro (4) señalamientos. En primer lugar, la Recurrente alega que la propuesta de Nexvel no permitía la creación de reportes automatizados de la información sobre los casos, e integración de estos con datos de visualización geoespacial y los sistemas financieros. Segundo, RK Rivera señala que la propuesta de Nexvel no destinó horas ni recursos para la generación de documentos y formularios automáticos que los usuarios puedan llenar y enviar. Como tercer señalamiento, la Recurrente alega que la propuesta de Nexvel no ofreció la capacidad de capturar firmas, tanto internas como externas, en formularios, cartas y otros documentos. Finalmente, RK Rivera señala que el costo de su propuesta fue superior debido a que incluyó elementos técnicos requeridos en la Solicitud de Propuestas ("SDP").

Ahora bien, la recurrida evaluó que las propuestas cumplieran con ciertos requisitos, a saber: 1. Fuerza de la propuesta general; 2. Capacidad del proponente; 3. Organización y dotación de personal; 4. Enfoque técnico y 5. Propuesta de costo. El comité evaluador discutió la información y evaluó las propuestas presentadas a luz de dichos criterios. Como resultado de lo anterior, Nexvel

obtuvo una puntuación total de 21.2, mientras que RK Rivera obtuvo 20.6. Según se desprende del *Aviso de Adjudicación de Propuesta SDP 2024-017*[18] ("Aviso de Adjudicación") Nexvel fue seleccionado por lo siguiente: 1. Experiencia en su campo, es decir, que ha trabajado proyectos similares a la SDP – Solicitud de Propuestas– en Puerto Rico y los ha concluido de forma satisfactoria; 2. Demostró ofrecer un servicio personalizado con respuesta inmediata a las solicitudes de apoyo técnico a las plataformas desarrolladas; 3. Presentó una propuesta económica con un promedio de servicio por hora más bajo.

Por otra parte, el comité evaluador informó que RK Rivera no fue seleccionado por las siguientes razones: 1. No cumplió con los requisitos de entrega de costos por hora de servicio; 2. Su propuesta económica total fue mucho más elevada; 3. Solicitó con su propuesta el adelanto del 50% del contrato lo cual no es permitido, ni representa los mejores intereses de la Corporación.

Luego de evaluar las alegaciones, nos resulta forzoso concluir que la parte recurrente no ha presentado ninguna evidencia que demuestre que la Corporación hubiera rechazado su oferta de forma arbitraria o caprichosa o que la adjudicación a favor de Nexvel respondiera a favoritismo o fraude. Es menester señalar que RK Rivera no logró probar que se hubiera cometido error alguno en el procedimiento de selección de propuesta. En síntesis, la Recurrente alegó que Nexvel cotizó una cantidad menor en su propuesta debido a que no cumplió con todos los requisitos solicitados. Sin embargo, cabe señalar que en nuestro ordenamiento no existe una regla inflexible que exija seleccionar la propuesta más baja. Por el contrario, existen otro tipo de consideraciones a tomar en

---

[18] Véase Apéndice 4 del recurso de revisión, págs. 64-69.

cuenta. Según se desprende del Aviso de Adjudicación, el comité evaluador no se limitó únicamente a considerar los costos por hora de las propuestas, sino que se evaluaron criterios como la experiencia en proyectos similares y el servicio personalizado a las respuestas de apoyo técnico a las plataformas desarrolladas. Lo esencial en este tipo de procesos es que se tome una determinación que resulte razonable. Por entender este Tribunal que la Corporación actuó dentro de los parámetros que le concede nuestro ordenamiento jurídico, no consideramos meritorio sustituir su criterio por el nuestro.

-IV-

Por los fundamentos antes expresados, se ***confirma*** la adjudicación de la solicitud de propuesta recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís<br>Secretaria del Tribunal de Apelaciones